Stephanie J. Meade, Attorney
Law Office of Stephanie J. Meade
P.O. Box 35382
Tucson, AZ 85740-5382
Telephone #: 520-419-0299
Email Address: meadelaw23@aol.com
State Bar #: 012525
PCC#: 38088
Attorney for the Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


| United States of America, | ) | NO. CR 24-cr-01979-SHR-1 |
|---|---|---|
| | **)** | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Defendant's Sentencing Memorandum |
| v. | ) | |
| | ) | |
| Nikolas Robert Molina, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Nikolas Robert Molina, comes before this court by and through his attorney undersigned, and pursuant to Fed. Crim. R. 32, U.S.C. 18 §3553 (a) (D) & (b)(1), and United States v. Booker, 543 U.S. 220 (2005) and provides these points for this Court's consideration for his Sentencing hearing on November 4, 2024, at 11:00 a.m.

1

Mr. Molina pled guilty to Engaging in the Business of Dealing Firearms Without a License 18 U.S.C. § 922(a)(l)(A), 18 U.S.C. § 924(a)(l)(D); Not more than 5 years imprisonment/$250,000 fine (Class D Felony).

In the PSR, the probation officer has calculated Mr. Molina's Total Offense as Level 13 with Criminal History Category II.   This would provide a guideline for 15-21 months. The plea agreement range is 0-15 months.

Probation Officer Neal has recommended a sentence of 9 months, followed by 3 years of supervised release.   For the reasons mentioned below, Mr. Molina moves this court to impose a sentence of probation.

In considering its sentencing, the court shall impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing – to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense; to deter criminal conduct; to promote public safety and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2); *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir.2013), *citing Pepper v. United States*, 562 U.S. 467 (2011).

In making its decision the court shall consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2

(2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation; (3) the kinds of sentences available (e.g., whether probation is prohibited or a mandatory minimum term of imprisonment is required by statute); (4) the sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines; (5) any relevant "policy statements" promulgated by the Commission; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Accordingly, the Supreme Court has consistently instructed that "the punishment should fit the offender and not merely the crime," and thus judges should use "the fullest information possible concerning the defendant's life and characteristics" to determine the appropriate sentence. *Trujillo*, 713 F.3d at 1008-09, *citing Pepper*, 562 U.S. at 487-88, and *quoting Williams v. New York*, 337 U.S. 241, 246-47 (1949).

While this Court must correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), *Rita v. United States, 551 U.S. 338, 356 (2007). United States v. Lorenzo-Santiago* (5th Cir. 2019), it may not treat that range as

3

mandatory or presumptive. *Id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009).

Based upon the information provided below, sending Mr. Molina to prison would be "greater than necessary" to meet this court's objectives. Therefore, he moves this court for a variance to a sentence of probation.   Should this court be disinclined to grant that request, then he moves for a sentence of home detention.

It is of note that it has been almost three years since the occurrence of the instant offense.   It took about a year and a half to charge Mr. Molina with this crime.   Over the last three years, he has made major changes and progress in his life that have made him a good candidate for probation.   He is remorseful, sober, hard-working and a good father to his two children.

Mr. Molina started life with challenges that he struggled with for many years.   As a child, he had to assume a "father role" for his family due to his mother's chronic alcoholism and his father's absence due to, *inter alia*, incarceration.   His mom died when he was only 17 years old.

Mr. Molina started coping with those pressures by self-medicating with drugs and alcohol at age 14.   His substance abuse accounts for most behaviors resulting in his convictions.

Fortunately, Mr. Molina was given in-residential treatment at CBI by the court during his release on this case.   It was life changing.   He thrived in his recovery program, graduated, and has done well on pretrial services.

Despite his challenges, Mr. Molina is a hard-working father of two who supports his children and keeps in regular contact with them. He has chosen to give them the type of father that he never had.   To be sure, his primary profession is that of a "roofer", which is one of the hardest physical labor jobs one could do in Arizona.   It takes a special skill set to do roofing and the extreme heat associated with hot tar on an Arizona summer roof makes the job even harder.   But he is not afraid of hard work and is willing to do what he needs to do to provide for his family.

Mr. Molina acknowledges that this offense has had serious repercussions, as the firearm purchases that he made resulted in the trafficking of 12 firearms that have yet to be recovered.   Still, he started his participation in these offenses because he had been lied to by others in his circle who insisted that his buying a gun, then turning around and selling it in short order, was legal.

To be sure, two of the codefendants in this case, who are relatives of Mr. Molina, told him that purchasing guns and then immediately selling them was legal. Unbeknownst to Mr. Molina was the fact that one of those relatives had

received a letter from Homeland Security in 2021 telling him that buying and selling weapons in that manner was illegal.   After that codefendant received that notice and clarification in lieu of prosecution, he resumed his activities and recruited Mr. Molina by telling him what he knew to be a lie regarding the legality of their actions.

When the group of them started going to the gun stores together while he made purchases, Mr. Molina contends that he became convinced that doing so was not, in fact, legal.   However, by then he wanted and needed the money and did not want to make waves with his relatives.

After the relatively short time frame of engaging in the business of dealing firearms without a license [September 3, 2022-November 17, 2022], he stopped his conduct.   Much later he was arrested. This is his first felony offense.

The probation officer noted that Mr. Molina's history of substance abuse may have contributed to his poor decision making.   It is also possible that his poor decision making was impacted by his "prolonged grief disorder" for which he was diagnosed.   Another variable that may well have impacted some of his poor decision making was the very serious car accident that he was in when he was 19 years old and his pickup truck flipped 5 times before he was able to crawl out from the wreck and be airlifted by helicopter to the hospital where he spent 5 days.

6

He still bears a significant scar on his head from that accident. The severity of the nature of his car accident anecdotally suggests that he may have experienced some damage to the prefrontal cortex of his brain, which effects impulsivity and decision making.   Despite all these hardships, he has continued to try and improve himself and make better choices.

Mr. Molina is a good candidate for probation. He is doing everything that he needs to do to be a productive member of society. Moreover, he has significant financial consequences in the form of $8,928.87 forfeiture.   He really needs to be out of custody to work to pay that large amount of money, as well as to take care of his children.   For these reasons, Mr. Molina moves this court for a sentence of probation.

Respectfully submitted this 27th day of October 2024.

_s/Stephanie J. Meade_
STEPHANIE J. MEADE,
ATTORNEY FOR DEFENDANT

Copy of the foregoing served electronically or
by other means this 27th day of October 2024 to:

Matthew Cassell, AUSA

7